481 F.2d 1406
 83 L.R.R.M. (BNA) 2957, 71 Lab.Cas. P 13,843
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Chicago Local 245, Lithographers and Photoengravers
International Union, AFL-CIO, Petitioner
v.
National Labor Relations Board,** Respondent.
 No. 72-1519.
 United States Court of Appeals, Seventh Circuit.
 July 6, 1973.
 
 Before CLARK, Associate Justice,* DUFFY, Senior Circuit Judge, and KILEY, Circuit Judge.
 
 Order
 
 1
 Petitioner, Chicago Local 245, Lithographers and Photoengravers International Union (Union) seeks review of, and to set aside, a National Labor Relations Board (Board) order issued against the Union for violation of Sections 8(b)(2) and (1)(A) of the National Labor Relations Act (Act) by causing the discharge of an employee of Alden Press, Inc. (Company). The Board cross-petitioned for enforcement of the order. We enforce the order.
 
 
 2
 Stattner, a Union member for several years, had been employed by the Company for one year between 1963 and 1964 and was reemployed in March, 1968 until April, 1969. He then resigned and went to work for National Colorgraphics where he worked until July 25, 1969 when he reapplied for work at the Company. At that time Presco, a Union member and also the person responsible for the Company's hiring, told Stattner that if he could get clearance from the Union he would hire him August 1, 1969. Subsequently Stattner was called before the Union Council to answer charges of violating the Union constitution and by-laws by acceptance of employment at National Colorgraphics over the objections of the Union due to National Colorgraphics' practice of having a portion of its work done in Japan. After appearing before the Council, Stattner was expelled from the Union and the proceeding before us followed.
 
 
 3
 The Trial Examiner, after hearing, recommended dismissal of the complaint for failure of the General Counsel to sustain his burden of proving the charge that an exclusive hiring arrangement existed between the Company and the Union with respect to hiring employees. The Board, however, found that there was an exclusive hiring arrangement which, in practice, precluded the Company from hiring any employee not approved by the Union. We think the Board's findings are supported by substantial evidence in the entire record.
 
 
 4
 The Board implicitly concedes that the literal language of the Union-Company agreement does not by its terms violate the Act. However, the Board found that the violation occurred in practice. No credibility question was involved in arriving at its decision. It drew an inference different from that drawn by the Examiner on uncontroverted testimony. We think the inference was warranted.
 
 
 5
 On appeal the Union urges the following contentions in support of its position that failure to approve Stattner was not an unfair labor practice: (1) no exclusive hiring arrangement existed between itself and the Company, and (2) even if an exclusive hiring arrangement existed, the Union was not an active participant in the same, nor did it refuse to allow the Company to hire Stattner. We see no merit in the Union's contentions.
 
 
 6
 Presco testified that he talked to Stattner following the latter's application to be rehired in August, 1969. Presco then talked to Union representative Timmel and asked: (1) whether the Company could rehire Stattner, and (2) what Stattner's rehiring status would be with the Union. Timmel replied that "it would be o.k. with him, but [Stattner] had to go before the [Union] Board; if everything was o.k. after the hearing, then it would be all right ... to hire [Stattner]...." There is evidence that Presco told Stattner of this conversation and informed him that Timmel could not give clearance because Stattner had "been a bad boy and he would have to see" the Union president. Stattner thereafter spoke to the Union vice-president Gunderson who told him he would have to appear before the Union Council and could not be given permission to take the job until the Council "decided his fate." Stattner reported this to Presco.
 
 
 7
 Subsequent to Stattner's appearance before the Council and his expulsion, vice-president Conlon of the Union told him, "now see what you can do without us." Thereafter Stattner told Presco that he had been expelled and further testified "that was the end of it as far as I was concerned." Stattner was not rehired and Presco filled the job two weeks later.
 
 
 8
 The Union contends that the Company's actual hiring of five men not referred by the Union at the time Stattner was seeking employment militates against the finding by the Board. In these cases Presco had notified the Union of the vacancies at the Company in accordance with the bargaining agreement provision. The Union sent out a member in three instances whom Presco rejected. However, before hiring any of the five men whose employment the Union relies upon, either Presco or the applicant called the Union to get its approval. This practice of calling the Union a second time for approval and in some instances having to wait a day or more after approval had been sought clearly shows the extent of the Union's participation in the employment decision-making process. The Union's reliance on the hiring of the five men does not militate against the Board's findings, but rather supports it.
 
 
 9
 We hold that the Board properly found the Union violated Sec. 8(b)(2) and (1)(A) of the Act by participating in the unlawful discrimination against Stattner as a result of the operation of an exclusive hiring arrangement.
 
 
 10
 For the foregoing reasons the order of the Board is Enforced.
 
 
 
 **
 13-CB-2959; 196 NLRB No. 97
 
 
 *
 Associate Justice Tom C. Clark, United States Supreme Court, Retired, is sitting by designation